WILLIAM H. JEFFERSON trading as E. JEFFERSON & SON *v.* GEORGE F. BRADY, HENRY BRADY, SAMUEL BRADY and WILLIAM BRADY, trading as GEORGE F. BRADY & Co.

The proprietors of a steam tug boat who have by contract with the company the exclusive right and privilege of towing vessels on the Chesapeake

and Delaware Canal by steam or horse power, except boats propelled by steam, or such as are provided with their own horses or mules to tow them, are liable while such steam tug is engaged in towing a row of canal barges in a line astern of her, which belong to other persons and are manned by crews employed and paid by the respective owners of them, for a collision of one of the barges with a sloop belonging to other persons which they were at the same time towing by mules in the opposite direction on the canal, caused by the negligence and failure of the captain and crew of the barge to steer it in meeting and passing the sloop; but if the person in command of the sloop also fails to exercise ordinary care, skill and prudence to avoid it, or contributes by any negligence on his part to the collision, the owner of the cargo of the sloop cannot maintain an action against them for the injury and loss occasioned by it.

ACTION on the case for damage to a cargo of indian corn belonging to the plaintiff sunk in a sloop by collision with a barge in tow of a steam tug boat of the defendants on the Chesapeake and Delaware Canal in the month of March, 1873, before Wootten and Houston, Judges, Gilpin, C. J., absent. The defendants had by contract with the canal company the exclusive right and privilege of towing all vessels on the canal both by steam tugs and by horses or mules, except such as were propelled by steam, or were provided with horses or mules of their own to tow them. At the time of the collision the sloop with the cargo of corn on board, consisting of about sixteen hundred bushels, was proceeding, drawn by a mule team belonging to the defendants and a driver of it in their employ, from Bohemia on the canal eastward through it to New Castle, when on rounding the curve to the west of, and near the Delaware Railroad bridge, and when within a hundred yards of it on the western side, the steam tug was suddenly discovered to be approaching it at full speed from the opposite direction, and only five or six hundred yards from it, but not in time for the sloop to be stopped before running into the bridge had the attempt been made to do it; and accordingly the proper signal having been promptly given on board of the sloop for the removal of the draw of the bridge which is not of sufficient width to admit two vessels abreast into it, and which was as promptly done by the keeper of it, the sloop was

immediately passed through the draw, when the order was given by the captain of her to the driver of the team to cast off the tow line, and as soon as the sloop was clear of the fenders of the draw on the other side, she was sheered close in toward the bank of the canal and the tow path, the steam tug then being about two hundred yards from the bridge. The tug had in tow astern of her four empty barges, or canal boats bound through the canal to the city of Baltimore, attached to it in a row or single line coupled together in the usual method and with the usual lengths of tow lines between them. As soon as the sloop cleared the draw of the bridge he discovered the barges in tow of the tug and that there was no one on the deck, or at the tiller of either of the third or fourth one in the line, and that they were both veering or yawing very much from the course of the tug toward his side of the canal, and to avoid a collision with them, run the sloop as hard aground as he could on his side of the canal and as close to the tow-path as practicable about a hundred and fifty yards from the bridge. It was also observed about the same time by the captain of the tug that there was no one steering either of the two hindmost barges, and he at once gave the signal from it for the men on the barges to steer them, but, before any one had appeared on deck and reached the tiller of either of them, the bow of the third barge came in contact with the bow of the sloop partly between it and the bank of the canal, carrying away the bowsprit and splitting her bows open down the stem from the deck to her keel, nearly, and dragging her round with her head toward the middle of the canal, sunk her beneath the water of it. In the mean while the engine of the tug had been stopped just after it had passed the sloop which was grounded immediately afterward by the captain of it. There was a strong wind blowing at the time from the northeast and partly across the canal and from the side of it on which the sloop was grounded. The barges in tow belonged to unknown and different persons living out of the State, and were all manned by crews employed and paid by the respective owners of them.

There was considerable discrepancy and even conflict in the testimony of the witnesses, as is usually the case in collision of vessels, but the facts as above stated were substantially established without any material contrariety in the evidence adduced on behalf of the respective parties. It further appeared also in the evidence that there is what is termed by the men in the business, a suction of the water produced in the canal by the passage of a steam tug or by any other vessel drawing as much water and propelled in like manner through it, which has the effect both to lift and draw a vessel from the sides of the canal into the wake of it immediately after passing it; and so well was that fact and the force and danger of it known to men as familiar with the navigation of the canal as was the captain then in command of the sloop, that the captains of vessels towed as the sloop was when meeting a steam tug, frequently stop and make them fast with their lines to the side or bank of the canal until they pass, in order to prevent and escape it, and that the most prudent captains generally adopt this precaution to avoid the danger of it, when they have sufficient notice and time to do so on such occasions; also that there are snubbing posts set in the bank on that side of the canal from the bridge up to near where the sloop was grounded, which afford peculiar facilities for that purpose. By the regulations of the canal company a tow drawn by horses or mules is required to keep on the side of the canal next to the bank on which the tow path lies and as close to it as practicable, and steamboats are always required to give the inner track to such a tow.

*Whiteley*, for the plaintiff. The barges in tow were under the direction and control of the tug and the captain of it, which rendered the defendants, the owners of it, answerable for the collision. Vessels or barges towed in a canal are always under the control and direction, and for that purpose are in charge of the captain of the tug while towing them; and where, as in the present case, the tow con-

sists of a number of barges each belonging to a different owner and is manned by a crew employed by its owner, this must of necessity be the case, otherwise there could be no superior will, authority or discretion in any one to control or direct it. Besides, the contract or engagement of the owners of the tug is to take or tow them through the canal, and they furnish in the tug the means or motive power to execute it, and this implies on the part of the owners of them that they will submit them to the control and direction, and to the command and authority of the master of the tug for that purpose. And such being his power and authority over them for that purpose, the crews on board of them, although not employed by the owners of the tug, but by the owners respectively of the barges for such services generally as may at any time be required in the navigation of them while so employed by them, become also for the time being and for that purpose, subject to the authority and control, orders and directions of the commander of the tug, as much so as the barges they are on board of are subject to him ; and as it has always been recognized and uniformly acted upon as a part of the undertaking by both of the parties to it, that it shall be the duty of the captains of the barges to attend to the steering of them when under way in the tow it was the duty of the captain of the tug, so far as others using the canal were concerned and who might be injured by their neglect of it, to see that they each attended to and performed that duty with proper care and diligence, so as to avoid doing injury to others ; and if he on his part failed in his duty to see and require that a suitable man was at the helm of each of the barges and steering it when the collision occurred, the defendants were responsible to the plaintiff for the loss and injury which he had sustained by it. Or if by stopping the tug so suddenly, he threw the tow into confusion, or by reason of it the captains on the barges for the time being lost control of them by means of their rudders, in consequence of which the collision happened, it was bad and unskillful handling of the tug and

tow under the circumstances which render them equally liable for the injury. The sloop was in her proper place according to the regulations of the canal company. She was in the inner track prescribed for the passage of a vessel towed by mules, and was as close to the bank and tow path as she could possibly get, and the captain, as soon as he saw the two last barges in the tow yawing in such a zigzag and alarming manner, run her hard aground on the side of the canal to escape a collison with them, and had no time to make her fast to snubbing posts, or any thing else, and having no alternative but that, he did all he could, and the best thing he could have done under the circumstances to avoid it.

But if it was the custom or the dictate of ordinary and proper prudence and precaution, for a vessel towed by mules or horses, to stop and tie up to the bank of the canal whenever it came in sight of a steam tug coming from the opposite direction, and the captain of the tug saw that that had not been done by the captain of the sloop on this occasion, it was his duty as soon as he discovered that he had not done so, either to have stopped the tug before he reached the sloop, or by increasing the speed of the tug straightened up the tow lines of the barges, or by steering to the leeward drawn them out of the way of any contact with the sloop aground on the opposite side of the canal. The law requires that even when a vessel is in the way of a tug, or the navigation is otherwise dangerous, the tug must proceed with great care and caution; and where a vessel is at a wharf, or is aground in the channel where she has a right to be, and a steam tug runs into her and damages her, it will be evidence of negligence and the owners of the tug will be answerable. *The Granite State,* 3 *Wall.* 310. *The Syracuse,* 12 *Wall.* 167. In all the cases of collisions by vessels in tow of steam tugs with other vessels, the chief inquiry of the courts has been, which, in contemplation of law, was the principal and which the agent or servant in the case, the tug and its owner, or the vessel and the owner of it being towed by it? But what-

ever may be the rule of law on the subject in the case of a single ship towed by a tug, there ought to be no doubt or question that in the case of a number of barges, each owned by separate and distinct proprietors, in tow of a steam tug on a canal, the men on board of them to steer them for the purpose of preventing such collisions as this, or any injury to each other while in charge and under the control of the tug, and properly assisting him and acting in conjunction with him in the performance of the same undertaking and a common duty, should be considered as much the agents or servants of the owners of the tug, for the time being, as the captain of the tug himself is to be considered their agent or servant on the occasion. And it has been decided, not in an admiralty, but in a State court, and in a common law action, that when a ship is in tow of a tug, if the ship is under the control of the tug, the tug is responsible for a collision of it with another ship. 1 *Pars. on Ship.* 534, *note* 3. *Sproul v. Hemmingway*, 14 *Pick.* 1, 5. 1 *Pars. on Ship.* 536, *note. Cushing v. The Ship John Frazier*, 21 *How.* 184. *Sturgis v. Boyer*, 24 *How.* 110. *Steamer Express*, 1 *Blachf. C. C. R.* 365. *Steamboat New York v. Ray*, 18 *How.* 223. Besides, the fact that the defendants have, by a compact with the Company, the exclusive right and privilege of towing on the canal both by steam and by horse or mule power, and every one who is not prepared to tow his own barge or vessel, is, therefore, obliged to employ them to do it for him, constitutes another and a strong reason why they should be held liable for this collision under all the facts and circumstances proved in the case.

*T. F. Bayard*, for the defendants. What were the legal relations existing between the parties to this action when the collision in question occurred? The canal is an artificial water communication between the Delaware river and a tributary of the Chesapeake Bay, to which the admiralty jurisdiction of the courts of the United States does not extend; and although the principles of jurisprudence

which are recognized in those courts, as well as the practice and modes of proceeding in them, are in many respects different from those which are recognized and adopted in the courts of common law jurisdiction, as for instance in regard to the defence of contributory negligence in a case of this kind, it is well settled that negligence of that character, on the part of the plaintiff, satisfactorily shown by the evidence as contributing to any extent or any degree whatever to produce the injury complained of by the plaintiff, is a complete defence and a bar to the action for it in the courts of common law, while in a court of admiralty it has no such effect, but on the contrary in such a court the mutual, and even the comparative degrees of the mutual negligence of the parties in the case contributing to produce the injury, may be considered, weighed and adjusted on principles of equity between them, and therefore, each party may there be adjudged to bear his fair and just proportion of the loss according to their respective degrees of negligence which contributed to produce it; yet the rulings in admiralty on questions of maritime collisions merely, and especially when a ship or vessel under tow of a steam tug is involved in the case, and the question between them, or their respective owners, as to which of them is legally liable for the consequences of the collision, is considered and decided in it, were not only applicable in a similar case pending before a common law tribunal, but were entitled to greater consideration and respect, from the fact, that such cases have more frequently arisen, and been more maturely considered and settled in courts of admiralty than in courts of common law.

The evidence in this case showed, that both the tug and the sloop were in their proper and respective courses or tracks, according to the regulations of the canal company, when the collision happened, the sloop laden with corn belonging to the plaintiff, proceeding eastward towed by horses or mules, and the steam tug of the defendants with four empty barges or canal boats in tow astern of her, proceeding westward through the canal, each of them

belonging to other and separate owners, and both manned
and commanded by persons employed and paid by them
exclusively, to run or navigate them, wheresoever they
might be sent. Each had its captain, as he is called,
so employed and paid by the owner or owners of it,
whose duty it was, he would admit, either to steer her or
to see that she was steered by a competent hand, whenever
and wherever it was required, either for her own protec-
tion, or the protection of the property of others from in-
jury. And such being the facts of the case in regard to
them, the question arises what was the legal relation which
then existed between the defendants as the owners of the
tug, and the respective owners of the barges and the men on
board of them in their employ for the purposes just stated?
The defendants were the bailees of the owners of the
barges for hire, for the time being, and for the purpose
simply of towing them through the canal, but they did
not, therefore, stand in the legal relation to them of com-
mon carriers for hire, and consequently they were not
bound by the well known and stringent legal obligation
of common carriers for hire, to tow even the barges safely
through the canal free from all accidents or injury, except
such as might be occasioned by the act of God or the pub-
lic enemy, for that was now a well settled principle and
distinction in law with regard to tow boats and towing
companies merely. *Ang. on Car. sec.* 668. *Alexander v.
Green,* 3 *Hill* 1. *Caton v. Rumney,* 13 *Wend.* 387. *Story on
Bailm. sec.* 496. 2 *Kent's Com.* 609. And as bailees merely,
of them, they were accordingly answerable, or bound only
for the exercise of ordinary care, skill, and diligence in
towing them, even to the owners of them, and, of course,
to no other person, or to a mere stranger to their contract
with the owners of them, could they be under any greater
obligation for the careful or skillful towing of them. Both
the tug and the sloop being in their proper tracks, each
was bound to use equal care, skill and caution to prevent
the collision, according to the exigency of the occasion
and the means afforded each of them of avoiding it.

What constitutes ordinary care and diligence is more a matter of fact than a matter of law, but it is defined to be no more than that degree of diligence which men in general exercise in respect to their own concerns, or which men of common prudence generally exercise in their own affairs in the age and country in which they live. *Story on Bailm. secs.* 11, 23.

But the barges in tow were not the property of the defendants, but of other owners who were entire strangers to them, and each of them were, as he had before remarked, under the command of men employed by the owners, and were not employed on board of them by the defendants, nor could they be discharged or removed from the service in which they were so employed, by either the defendants, or their agent, the captain of the tug, and they were, consequently, the agents or servants solely of the owners of the barges who employed and could alone remove them, and not of the defendants or the commander of the tug, and, therefore, no such relation as that of principal and agent, or master and servant, could have existed between them and the defendants in contemplation of law ; but if the collision was the result of culpable negligence on the part of the captain in command of any one of the barges in neglecting to steer her, without any contributory negligence on the part of the captain of the sloop tending to that result, the owner of such barge would be responsible as the principal or master in the case for it, and not the defendants. And it has been so ruled in the Supreme Court of Massachusetts, in a case of collision very similar in its circumstances to this. *Sproul v. Hemmingway,* 14 *Pick.* 1. There was this difference, however, between them. In that case the owner of the brig, which was in tow astern of the steam tug, and which by reason of the negligence of the crew on board of the tug, collided with a ship at anchor at the time, was sued, instead of the owners of the tug, by the owner of the ship, for the injury sustained, and the question raised was whether the master and crew of the tug could be legally considered as the

servants of the defendant, the owner of the brig. The court recognized the difficulty of determining what facts and circumstances in legal contemplation go to establish the relation of superior and subordinate, or of employer and employee, in such a manner as to give effect to the rule, but it was held that the defendant was not responsible for damages attributable to the default of the master and crew of the towing steamboat, because as Shaw, C. J., said, they were not the servants of the defendant, were not appointed by him, did not receive their wages or salaries from him, the defendant had no power to remove them, and had no power to order or control them in their movements ; but he also added that on board of a brig towed astern by means of a cable as that was, something may and ought to be done by the master and crew in steering, keeping watch, observing and obeying orders and signals, and if there was any want of care and skill in the performance of these duties, then the case we have been considering does not exist, the damage is attributable to the master and crew of the towed brig, and they and their owners must sustain it. In this case, according to the evidence for the plaintiff, the only power which the captain of the tug had to control the men on the barges was to set them adrift by casting off their tow lines if they neglected their duty or failed to steer them, or refused to obey his orders while under tow, but owing to the manner in which the four barges were coupled together, one after the other, that could only have been done by casting off the first which was alone made fast to the tug, and thus casting off all at one and the same time, and yet no witness had pretended to say that either the first or the second barge in the line was in any wise in default, or that the men on board of those two were guilty of any negligence whatever on the occasion. But if that was the only power or control which the captain of a tug has over the barge-men while in tow, it was perfectly manifest that it could be of no avail in such an emergency, and hence the stronger was the reason and the greater was the necessity for hold-

ing their employers and masters, the owners of the barges, responsible for their carelessness, want of skill, or recklessness.

But the evidence had also clearly shown what prudent and discreet men in command of vessels, under tow by horses or mules on the canal, are in the habit of doing when meeting a steam tug with barges in tow, by way of precaution to prevent just such accidents as this to their vessels, well aware as they all are, (and which was as well known to the captain of the sloop in this case,) of the force and effect of the passage of such a boat by them, first the swell of water towards the banks caused by the motion of the boat and the brief displacement of it from her track, and then the sudden reflow of it back again into her wake as soon as she has passed, to recover its former and natural level, and which they call the suction of the tug; and that unless they stop in time and make fast their vessel to the bank, she is always in imminent danger of being swept by it into the track of the tug and into contact with the tow astern of it; and that it was in his power to have adopted that precaution by making fast with his lines to the snubbing posts set in bank for a distance of some hundred yards or more on his side of the canal, any where between the bridge and the place where he imagined he had run her hard aground on the side of it. Had he done that, instead of merely running her ashore, the sloop would have been safe from any contact or collision with any barge in the tow, for it was manifest from the testimony of more than one of the witnesses, that it was the swell of the water that first lifted her from the bottom and then the reflow of it that swung her bow around towards the line of the tow, and which caused the collision with the barge in the manner which they had described. But if he omitted to adopt such a prudent, and convenient, and safe precaution, which any ordinarily prudent and discreet commander of such a vessel would have certainly adopted under such circumstances, and in such a favorable position for it, to avoid the collision, he was guilty of negligence in neglecting to

do it, and if that negligence or failure to exercise such
ordinary care, prudence and precaution which the occasion
and his situation properly demanded of him, contributed
in any degree whatever to produce the collision, and, as it
evidently did in the highest degree, then the plaintiff could
not recover in the action.    The obligation of prudence on
the part of the captain of the sloop was the same as on the
captain of the tug, for all vessels meeting on the canal are
equally bound to use skill, care and diligence to avoid a
collision.

*Whiteley.*    The only difference between the principles
of law recognized in Courts of Admiralty and Courts of
common law in cases of collision, is, that which had been
stated, that when the justice and equity of the case re-
quire it, Courts of Admiralty will apportion the damages
between the parties according to the degrees of fault or
negligence of which each has been guilty; but in other
respects they are the same.    *Pars. on Ship. & Admir.* 534.
If persons having vessels or barges to be towed through
the canal are obliged to employ the defendants, or come
prepared to do it for themselves, and the defendants are
bound by their engagement to the canal company to
tow all craft capable of navigating it that may require it
of them, are they not bound by the obligations of their
undertaking to tow them with due care, skill and dili-
gence so as to avoid doing injury to them while under
tow, and also injury to the canal itself, its locks, bridges,
banks, and other property of the company, and to the
property of others who, at the same time are using it for a
similar purpose?    And if so, are they not, for the time
being, so far the principals or masters of all whom they
entrust with the responsibility of helping them so to tow
the vessels thus committed to their charge, as to become
liable on the general principle of law for any damage
resulting from their negligence to any of the parties to
whom he had referred?    *Ang. on Car. sec.* 668.    The fact
that the captain of the tug makes up the tow, and directs

how the barges shall be coupled together, and the number and length of the tow lines, and prescribes the distances they shall be towed apart from each other, with a view not only to their own safety, but to the safety of the property of others they may meet or pass on their route, all show that he has a master's charge and control of them, and of all on board of them from the very start. And if he has that charge and control of them, does he not take with it all the legal obligations and liabilities which invariably accompany that relation, so long as it endures, for all injuries resulting from the negligence of others in the due course of their employment in his service?

As to the alleged contributory negligence of the plaintiff, the principle of law was not that any and every degree of contributory negligence on the part of a plaintiff, however minute, trifling or insignificant it might be, is a counterpoise and a legal defence to any amount of negligence exhibited on the part of the defendant, however gross or palpable it may be. Contributory negligence, however, is not to be inferred or presumed, particularly where the negligence of the defendants is manifest and can be defended upon no other ground; but it must be proved, and it must clearly appear, to constitute such a defence and a bar to the action. But there had been no proof of it produced in this case, because it was perfectly clear from the evidence, that, although the captain of the sloop discovered the tug before he reached the draw of the bridge, he did not see, and could not see, a barge behind her, and did not know that she had anything in tow astern of her, and it was not until he had cleared the draw and the fenders that he first saw the barges, and after the tug had passed him and the first two, which were steered and keeping their course correctly, were in the act of passing him that he first discovered the last two were not steered, and were yawing dangerously towards him, and it was then too late to do or attempt anything, but to run his sloop aground on his side of

the canal as hard and as speedily as possible, to avoid the imminent danger which he at once saw was then threatening him. Indeed, from the time the sloop cleared the fender of the draw, until he was run into by the third barge in the line, he had not time to tie up the sloop to the snubbing posts to escape the collision, even if that would have sufficed, under the circumstances, to save her from it, but which after all was purely hypothetical and a mere matter of conjecture. The probability, however, was decidedly against it.

*The Court, Wootten, J., charged the Jury.* Gentlemen of the Jury:—This case which you have been called and sworn to try is an action on the case for the recovery of damages brought by Wm. H. Jefferson, trading as E. Jefferson & Son, against George F. Brady, Henry Brady, Samuel Brady and William Brady, trading as George F. Brady & Company.

It appears that the plaintiffs had shipped on board the sloop *Helen,* a cargo of corn, being some sixteen hundred and eight bushels, to be carried from Bohemia, through the canal, to Delaware City. That on the 25th day of March 1873, the sloop *Helen,* commanded by Captain Wm. Robinson, was passing through the canal, and when approaching the railroad bridge the captain saw a steam tug coming in the opposite direction some distance off, variously estimated by the witnesses. He blew a signal horn and gave other signals. He passed through the draw of the bridge, steered close into the tow path, and grounded the sloop, telling his driver to hold up. The tug and two of the barges, there being four in tow, passed the sloop, and the third or fourth barge struck her, breaking her bowsprit and opening her bow nearly to the keel, whereby she filled and sunk, resulting, as is alleged by the plaintiffs, in the loss and injury complained by them, for which they claim damages of the owners of the tug towing the four barges.

The plaintiffs contend that the defendants, who are ad-

mitted to be the owners of the tug, had the control and direction of the barges in tow by her, and are responsible for the alleged injury and loss occasioned by the collision of the barge which collided with the sloop ; the injury and loss being, they say, the result of negligence on the part of the captain having command and direction and control of the tug.

The defendants resist the plaintiffs' claim for damages arising from the collision, denying that the commander of the tug had the control and direction of the barges being towed by her, and insisting that they were under the control and direction of the captains respectively commanding them, and that therefore the owner of the barge which collided with the *Helen* is responsible for any injury or loss which resulted from the collision.

The defendants also rely as a matter of defence upon what is called contributory negligence, that is, negligence and want of care, skill and diligence on the part of Capt. Robinson, in the command and management of the *Helen*, which they say contributed to the disaster by which the loss complained of by the plaintiffs was occasioned. They contend that when the Captain of the sloop sheered her close in to the tow path or bank, ordinary care and diligence required that he should have tied her up, so that the suction of the water, produced by the tug and first barges when passing, would not have drawn her out from the bank or tow path into deeper water, and in or near the line of the tow in which the other and remaining barges were passing. They insist that when the tug and first two or three barges passed the sloop, the agitation of the water and the suction thus produced, caused her to swing out from the tow path or bank into or near the line of the tow, which was the result of negligence and want of care and diligence on the part of the Captain of the sloop in not tying her up, which negligence and want of care they contend contributed to the disaster and the loss and injury complained of. These are questions of law

81

and fact, the one for the consideration and judgment of the Court and the other to be determined by the jury.

Here the important question arises whether the owners of the tug are the responsible parties or whether the liability rests upon the owner of the barge which collided with the *Helen* and caused her to sink ? It is important that the law in this respect be settled, that all persons interested in the matter may know their rights and privileges and their liabilities. Placing our adjudication of the law on the principles of the common law of principal and agent, it becomes important to know which of these parties is to be considered principal and which the agent.

The defendants were engaged in the business of towing vessels and barges through this canal by both steam and horse or mule power. They have a contract with the canal company, by which they agree on their part to tow all vessels and barges applying to them, through the canal, either by steam or horse or mule power, at the option of the party applying ; and their contract obliges them to perform this service for a rate of toll stipulated by the canal company, and no others can engage in the business, or pass through the canal, except those who furnish their own motive power. The defendants, therefore, to that extent have the exclusive privilege of towing vessels and barges through the canal, and when the owner of a vessel or barge wishes to pass through he is *ex necessitate* obliged to employ them to take the tow, unless he has his own motive power to propel his vessel or barge through.

Now it seems to us that it would be very unreasonable and a hardship on the business community, who use this navigation for the purposes of trade in various commodities, to be compelled to employ any particular person to tow their vessels and barges through the canal who is not to be responsible for loss occasioned by their negligence, and without having the privilege of contracting in reference to damages occasioned by reason of collision which might result in great loss and damage to them by the

default and negligence of the party they were obliged to employ. And the owners of vessels and barges wishing to pass them through the canal, are not only restricted as to the person to be employed by them, but are precluded from the privilege of contracting or stipulating as to liability in the event of injury and loss by reason of collision and negligence, whilst they are bound to pay the rates of toll fixed by others—in the case of the canal, by the President or Board of Directors of the Company.

In view of all the facts and the nature and character of this peculiar mode of transportation, and there being no settled rule of law applicable to such cases—the decisions in different States being in conflict in reference to the party liable—it being held in Massachusetts and New York that the tug is responsible and in Pennsylvania that the vessel in tow is liable. Most of the cases cited are in admiralty, in which there are principles or propositions not known to the common law. In those cases either or both of the parties may be proceeded against and held responsible for injury and loss resulting from collision occasioned by negligence, whilst at common law the case must be one of unmixed negligence and the party whose negligence occasioned the collision and consequent injury and loss is liable.

The decisions being in conflict and irreconcilable, and most of them in admiralty, and different in principle from the one before us, we cannot, in our judgment, adopt a better rule or a more just and reasonable one to fix and settle the relations and liabilities of those who make it a business to tow vessels and barges through this artificial navigation, and those who employ them under the rules and regulations of the Canal Co., than to treat them as principals and agents, applying to them the law of principal and agent and holding them liable under it as such.

We cannot conceive how the operations in this business could be carried on under any other rule of law. To reverse the proposition and make the vessels in tow the principals and the tug the agent would be attended with insurmountable difficulties. There would have been in

this case four commanders and one to be commanded ; the captain of each barge would have been a principal and commander, each perhaps giving different orders to the captain of the tug ; who, then, in the event of a collision, would be responsible for loss occasioned by it? It is necessary that the tow should have some one in command to control and direct their course and rate of speed, which authority could not be exercised except by the one in command of the tug ; and every one in command of a vessel or barge in tow must be subordinate to him and subject to his orders and directions while being towed by him, by so steering, keeping watch, and observing and obeying orders, signs and signals from the commander of the tug and the whole tow, and so managing his vessel or barge as to keep it in the course or track of the tug, and to use and exercise due care, skill and diligence to avoid collisions or doing injury to the property of others.

Under this rule the defendants are not common carriers and are therefore not held accountable for the extraordinary degree of care and diligence which the law of common carriers imposes upon them : but they are held to the same rule of responsibility as ordinary bailees for hire are. They are answerable for a loss or injury occasioned by a want of ordinary care, skill and diligence. Ordinary bailees may stipulate for a different degree of responsibility from that to which they would be held liable in the absence of an express agreement or contract. They may bind themselves by the law of common carriers, that is, for the safe transportation and delivery of goods at all events, and on the other hand they may contract for any exemption from liability less than the law of principal and agent subjects them to.

Now, gentlemen, having announced to you the law applicable to this case, I must say to you that the defendants being the owners of the steam tug Swallow, commanded by captain Smithers, and under our ruling the principal, and the owners of the several barges for the time being and for the purposes of transportation on the occa-

sion in question the agents and subordinates of and under the control and direction of the tug's commander, they are liable to the plaintiffs for any loss they sustained by reason of the collision between one of the barges she had in tow and the sloop Helen, *provided* the collision was occasioned by negligence and want of ordinary care, skill and diligence on the part of the commander or captain of the steam tug Swallow then having the barges in tow, or on the part of any persons whose duty it was to steer the barges, unless there was contributory negligence on the part of the sloop's commander, and this brings me to that branch of the defence set up and relied upon by the defendants. They contend that there was contributory negligence and want of ordinary care, skill and diligence on the part of the Captain of the sloop, and that therefore they are not responsible for the consequences of the collision, though there may have been negligence and want of ordinary care, skill and diligence on their part. Such, gentlemen, is the law, and if you should be satisfied that there was culpable negligence, and a want of ordinary care, skill and diligence on the part of the commander of the sloop, the defendants are not liable for the loss and injury sustained by the plaintiffs by reason of the collision, whether the colliding would or would not have happened had there been no such contributory negligence or want of care and diligence on the part of the sloop's commander. Both parties are held to an equal degree of care and diligence, and to entitle one to recover damages for an injury and loss, he must be blameless, and the other the defaulting and culpable party. The law does not measure the amount or extent of the contributory negligence, for it would often be difficult, and, perhaps, impossible to ascertain whether the disaster would or would not have happened had there been no contributory negligence. If, therefore, there be any, it exonerates the other party from liability.

I have now said to you all that is necessary that I should say. I have given you the opinion of the Court upon the law ; the facts are for you to deal with. It is not our

province, and therefore I have expressed no opinion in reference to them further than was necessary for the purpose of making myself understood in the announcement of the law.

I have now performed my duty to the best of my ability, and if I have erred there is a remedy for the aggrieved party. Our judgment can be reviewed by a higher tribunal, and I should be very happy to be corrected if I am not right.

It now becomes your duty to perform the responsible part in the case which has devolved upon you, and you will now take the case and give it a full and careful consideration, and upon the law as you have it from the Court and the evidence given you by the witnesses make up your verdict as in your best judgment you shall believe to be just and right, and as the law and evidence not only justifies but requires ; and if there should be error in your finding let it be of the judgment and not of the heart.

The plaintiff had a verdict.